United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ROZELLA JOHNSON,                          No. C-04-4879 MMC

12            Petitioner and Plaintiff,        **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFERRED**
13       v.                                    **PORTION OF DEFENDANTS' MOTION
                                               FOR SUMMARY JUDGMENT;**
14   ALAMEDA-CONTRA COSTA TRANSIT              **GRANTING IN PART AND DENYING IN
     DISTRICT, and KATHLEEN KELLY,             PART PETITION FOR WRIT OF**
15                                             **MANDAMUS; REMANDING ACTION IN
              Respondents and Defendants       PART**
16   _____/

17

18        Before the Court is defendants Alameda-Contra Costa Transit District ("AC Transit")

19   and Kathleen Kelly's ("Kelly") motion, filed September 9, 2005, for summary judgment,

20   pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Rozella Johnson

21   ("Johnson") has filed opposition, to which defendants have replied.  The matter came on

22   regularly for hearing October 14, 2005, at which time the Court directed the parties to file

23   supplemental briefing with respect to the adequacy of the administrative record of which

24   Johnson seeks judicial review; the parties thereafter filed their supplemental briefing.

25        By order filed January 23, 2006, the Court granted in part, denied in part, and

26   deferred in part defendants' motion.  Specifically, as to the First Cause of Action, by which

27   plaintiff seeks judicial review of a hearing officer's decision upholding her termination, the

28   Court granted defendants' motion, except to the extent the First Cause of Action is based

1  on a claim that the hearing officer's decision is not supported by the evidence, as to which

2  claim the Court directed the parties to address plaintiff's request to augment the

3  administrative record.  The Court deferred ruling on defendants' motion to the extent it

4  pertained to the Second through Eleventh Causes of Action, pending resolution of the

5  merits of the remaining claim in the First Cause of Action.  Thereafter, the parties filed

6  supplemental briefing addressing the propriety of augmenting the administrative record.

7       By order filed February 27, 2006, the Court granted in part and denied in part

8  plaintiff's request to augment the administrative record, and set a briefing schedule on the

9  issue of whether the administrative decision should be affirmed or set aside.  Thereafter,

10  the parties filed supplemental briefing addressing the merits of the administrative decision.

11       Having considered each of the above-referenced filings and the arguments of

12  counsel at the hearing, the Court rules as follows.

13                                     **BACKGROUND**

14       Johnson is an African-American woman over the age of 40 who formerly worked for

15  AC Transit, most recently as an executive administrative assistant to Kelly.  Johnson

16  alleges that in February 2004, AC Transit, acting on information provided by Kelly,

17  terminated her employment.  According to Johnson, the recommendation was motivated by

18  discriminatory animus on the part of Kelly and was in retaliation for Johnson's having

19  engaged in protected activity.  Johnson also alleges that Kelly, during the course of

20  Johnson's employment, subjected Johnson to a hostile work environment and failed to

21  accommodate her disabilities and medical conditions.  After she was terminated, Johnson

22  requested a hearing before a hearing officer to review the propriety of the termination.

23  Following the hearing, the hearing officer, by a Decision and Award dated August 6, 2004,

24  as amended August 10, 2004 ("Decision"), upheld the termination.

25       Johnson, alleging the hearing officer abused his discretion in upholding the

26  termination, petitions the Court for a writ of mandamus to set aside the Decision.  Further,

27  Johnson seeks damages under both federal and state anti-discrimination laws.

28  //

**DISCUSSION**

**I. First Cause of Action (Petition for Writ of Administrative Mandamus)**

In her First Cause of Action, Johnson seeks a writ of administrative mandamus, pursuant to § 1094.5 of the California Code of Civil Procedure, to set aside the Decision.  A party petitioning for relief under § 1094.5 is entitled to relief upon a showing of an abuse of discretion by the hearing officer.  See Cal. Code Civ. Proc. § 1094.5(b).  As noted above, the Court has granted defendants' motion for summary judgment as to the First Cause of Action, except to the extent such cause of action is based on Johnson's claim that the Decision is not supported by the evidence.

"Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence."  See Cal. Code Civ. Proc. § 1094.5(c).  The instant action involves a claim in which the Court is authorized to exercise its independent judgment.  See Boctor v. Los Angeles County Metropolitan Transit Authority, 48 Cal. App. 4th 560, 572-73 (1996) (holding, because discipline imposed on public employee affects "fundamental vested right" in continued employment, reviewing court must "exercise its independent judgment on the evidence")  "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence."  Fukuda v. City of Angels, 20 Cal. 4th 805, 817 (1999).

**A. Administrative Proceedings and Findings**

By a "Notice of Intent to Terminate for Poor Performance and Insubordination," dated January 28, 2004, AC Transit advised Johnson that AC Transit was terminating Johnson's employment on grounds of "poor performance and insubordination."  (See

//

//

3

Hearing Officer's Notes and Exhibits ("HON")[1] Ex. 1.)  On February 9, 2004, at Johnson's request, AC Transit's Human Resources Director Kurt De Stigter ("De Stigter") conducted a hearing to review the charges set forth in the January 28, 2004 notice; by letter dated February 24, 2004, De Stitger advised Johnson of his finding that the charges had merit and that she was terminated effective February 24, 2004.  (See id. Ex. 2.)[2]  On February 25, 2004, Johnson requested that a hearing officer review the propriety of the termination.  (See id. Ex. C.)  Beginning June 3, 2004, the hearing officer conducted a three-day hearing, and, on August 6, 2004, issued the Decision.  (See Decision at 1, 44.)[3]

As to the charge of insubordination, the hearing officer concluded AC Transit had failed to show the conduct forming the basis for such charge constituted insubordination, but, rather, constituted "disrespect for the supervisor."[4]  (See id. at 31.)  In light of such finding, the hearing officer ruled, as to that charge, the "appropriate penalty was a five-day suspension," not termination.  (See id.)

As to the charge of poor work performance, the hearing officer sustained the termination, finding AC Transit had demonstrated that Johnson, "through incompetence or intention, was not adequately performing as executive administrative assistant for Kelly," (see id. at 25), and that Johnson's "performance lapses not only impacted [AC Transit] internally, they had significant negative impacts on [AC Transit] in its relations with elected officials and others with power to influence [AC Transit]," (see id. at 26).  The hearing officer also found Johnson had failed to show that her age, her medical condition of cancer,

---

[1]The hearing officer's notes and the exhibits offered at the hearing are Exhibit D to the Trowbridge Declaration filed November 30, 2005.

[2]In what appears to be an oversight, the second page of De Stigter's letter of February 24, 2004 is not included in the administrative record provided to the Court by Johnson.  A complete copy of that letter, however, was separately submitted by defendants.  (See Hoyt Decl., filed September 9, 2005, Ex. J.)

[3]The Decision is Exhibit L to the Hoyt Declaration filed September 9, 2004.

[4]The incident in question occurred on January 16, 2004.  The hearing officer found that, on that date, "Kelly was intimidated by [Johnson's] angry, loud voice and her kicking the door [of Kelly's office] closed."  (See id. at 31.)

1   or her race played a part in the decision to terminate her.  (See id. at 36-39.)  The hearing

2   officer further found Johnson had failed to show the termination was motivated by

3   retaliation for Johnson's having engaged in protected activities, specifically, requesting a

4   medical leave, offering to assist a co-worker who had sued AC Transit, filing internal

5   grievances, filing a claim with the California Department of Fair Employment and Housing,

6   and filing a worker's compensation claim.  (See id. at 39-42.)  Finally, the hearing officer,

7   addressing Johnson's claim that AC Transit would not allow her to access her personnel

8   record, found Johnson had failed to establish any lack of access and, alternatively, that any

9   lack of access would not provide grounds to nullify the termination.  (See id. at 42-43.)

10          **B. Deficient Performance**

11          As noted, the Court starts with the presumption that the hearing officer's finding of

12  deficient work performance is correct.  Johnson argues that such presumption has been

13  rebutted because the weight of the evidence does not support the hearing officer's finding.

14          The administrative record, however, is replete with evidence of failures by Johnson

15  to adequately perform her assigned tasks.  These incidents include, but are not limited to,

16  Johnson's repeated failures to properly manage Kelly's calendar, to timely complete

17  minutes of executive meetings, to manage Kelly's emails, to prepare without errors

18  memoranda and agendas for meetings, and to timely submit monthly reports.  Indeed,

19  defendants have identified well over 50 examples of such conduct, each of which is

20  documented by evidence in the administrative record, the vast majority of which Johnson

21  either expressly conceded or implicitly conceded by failing to offer a response thereto at the

22  administrative hearing.  (See Defs.' Reply to Pl.'s Opening Brief, filed April 14, 2006, 7:19 -

23  16:6.)  Further, during the time Johnson was on a medical leave from December 2002 to

24  March 2003, two different temporary employees were, respectively, able to competently

25  perform Johnson's assigned duties, thus demonstrating those duties were not overly

26  onerous or difficult.

27          Having reviewed the record independently, the Court finds Johnson has failed to

28  rebut the presumption of correctness as to the hearing officer's finding that her work

1  performance was deficient.

2      **C. Discriminatory Animus**

3      Johnson argues her termination was the product of discriminatory animus on the

4  part of Kelly.[5]

5      Before the hearing officer, Johnson argued that Kelly discriminated against her

6  because Johnson is over the age of 40, had been diagnosed with cancer, and is African-

7  American.  Before this Court, Johnson does not articulate any basis to rebut the

8  presumption of correctness as to hearing officer's decision as to a lack of age

9  discrimination, and, consequently, such finding is presumed correct.  Johnson argues,

10  however, that this Court should find Kelly discriminated against her because of Johnson's

11  cancer diagnosis and her race, as well as a "mental disability."  (See Pl.'s Opening Brief,

12  filed March 21, 2006, at 8:19-20.)

13      Johnson did not argue to the hearing officer that Kelly was motivated to act by

14  reason of any mental disability on Johnson's part, and thus Johnson has waived that issue.

15  In any event, although the administrative record contains evidence that Johnson has

16  experienced "stress, anxiety and depression," (see HON Ex. K), Johnson points to no

17  evidence in the administrative record to support a finding that any such condition, either

18  individually or in combination, rose to the level of a disability, i.e., that Johnson is limited in

19  her ability to perform a major life activity as a result of such condition.  See, e.g. , Cal. Gov't

20  Code § 12926(i) (providing person is "disabled" for purposes of FEHA if such person has a

21  "mental or psychological disorder or condition" that "limits a major life activity").

22      As to Johnson's having been diagnosed with cancer, Johnson, both at the

23

24      [5]Johnson has not challenged the hearing officer's finding that AC Transit General
25  Manager Rick Fernandez ("Fernandez"), who made the decision to terminate Johnson, did
   not act with a discriminatory animus.  The Court thus presumes the hearing officer's finding
26  with respect to Fernandez is correct and considers only whether Kelly, who testified she
   provided the information on which Fernandez relied, acted with a discriminatory animus.
27  See, e.g., Perez v. Curcio, 841 F. 2d 255, 257-58 (9th Cir. 1988) (holding, where plaintiff's
   supervisor prepared report on which employer relied when terminating plaintiff, evidence of
28  supervisor's discriminatory animus relevant to issue of whether employer unlawfully
   terminated plaintiff)

administrative hearing and before this Court, relies on Johnson's having informed Kelly of the diagnosis in November 2002 and Kelly's written notice to Johnson, the following month, setting forth Johnson's performance deficiencies.  The hearing officer observed that "the tight temporal connection raises an inference of causality," but found any such inference was dispelled, in that Kelly had donated sick leave to Johnson while Johnson was on a medical leave because of the cancer diagnosis and the record included no comments or actions evidencing any consideration by Kelly of Johnson's diagnosis.  (See Decision at 37.)  Having reviewed the record independently, the Court finds Johnson has failed to rebut the presumption of correctness as to the hearing officer's findings that Kelly was not motivated by any animus based on Johnson's diagnosis.  In addition to the reasons stated by the hearing officer, any inference of discrimination that might arise from the above-noted temporal connection between Kelly's knowledge of the diagnosis and her putting the reasons for her dissatisfaction with Johnson's work in writing is undermined by the fact no action to terminate Johnson was taken until more than a year after Kelly learned of Johnson's diagnosis.  Further, although Johnson, relying on her testimony that Kelly assigned her new tasks once she returned from her leave, argues such new assignments were an attempt to cause Johnson to fail, Johnson conceded at the hearing that Kelly told Johnson to notify Kelly if Johnson found she needed any adjustment of her duties after returning to work, (see HON at 26), conduct indicative of an effort to accommodate rather than an attempt to discriminate.

With respect to the claim of racial discrimination, the hearing officer found Johnson had offered no evidence that her race was a motivating factor on Kelly's part, and that it was Johnson who "frequently injected her race and background into discussions, and then tautologically divined racial animus when there was none."  (See Decision at 39.)  In arguing the presumption of correctness of such finding has been rebutted, Johnson relies on deposition testimony of Candy Williams-Scarlett ("Williams-Scarlett") and Francois Njike

//

//

7

("Njike"), both former employees of AC Transit,[6] concerning their respective interactions with Kelly.[7]  According to Johnson, such testimony establishes that Kelly harbors discriminatory animus toward African-Americans.

When asked at her deposition whether she believed that Kelly was biased against African-Americans, Williams-Scarlett answered, "Yeah, I did [believe that]."  (See Williams-Scarlett Dep. at 30:3-9.)[8]  According to Williams-Scarlett, she formed such belief based on interactions with Kelly that occurred in 1995 or earlier, (see id. at 35:16-18, 40:1-2),[9] specifically, that Kelly was "abrupt" when speaking to Williams-Scarlett, (see id. at 26:9-10), that Kelly would "stand at the door and yell" when talking to Williams-Scarlett, (see id. at 33:20-21), and that Kelly made "belittling" comments about Williams-Scarlett's work, (see id. at 34:9-10).  Although Johnson argues Williams-Scarlett's testimony is relevant as to the issue of whether Kelly harbors a discriminatory animus toward African-Americans generally,[10] any such relevance is greatly outweighed by the fact that the incidents to which Williams-Scarlett testified are remote in time, occurring almost a decade or more before the February 2004 termination at issue herein.  Further, the probative value of Williams-Scarlett's testimony is minimal in light of her conclusory language and absence of details in describing the encounters, and Williams-Scarlett's acknowledgment that Kelly is ordinarily a "loud person."  (See id. at 33:21-22.)  Additionally, although Williams-Scarlett testified she had not observed Kelly engaging in similar conduct with "white" employees, Williams-Scarlett conceded she "never really had the time to pay that much attention" to Kelly's interactions with other employees, (see id. at 38:21-25).

---

[6]At the time of the hearing, Williams-Scarlett was employed by AC Transit.

[7]By order filed February 27, 2006, the Court augmented the administrative record to include deposition testimony, taken in the instant action, of Williams-Scarlett and Njike.

[8]Excerpts from the Williams-Scarlett deposition are Exhibit D to the Trowbridge Declaration filed September 22, 2005.

[9]Williams-Scarlett testified that her interactions with Kelly occurred "over ten years ago," (see id.); she was deposed on April 25, 2005, (see id. at 1).

[10]Williams-Scarlett did not testify about any interactions between Johnson and Kelly.

At his deposition, Njike testified he was of the view that Kelly was racist because she criticized his work by "yelling and screaming," and he had not witnessed her behaving in such manner with "white staff." (See Njike Dep. at 63:8-12.)[11]  Njike also concluded, from witnessing interactions between Kelly and Johnson, that Kelly was racist because of the "tone" she used when speaking to Johnson.  (See id. at 58:20-25.)  Njike's conclusion that each negative interaction between himself and Kelly and those he witnessed between Johnson and Kelly was the result of racism on the part of Kelly is, however, undermined by Njike's testimony that Kelly was, as a general matter, unpleasant.  As Njike described her, Kelly was a "megalomani[a]c" who "made abuse of the power when she was placed in [AC Transit]," and who "expected whoever worked for her to kiss her behind."  (See id. at 56:19-25 (emphasis added).)  Indeed, Njike was adamant in his belief that retired persons who had worked for Kelly as well as persons then-currently working for Kelly would testify in a similar manner, (see id. at 56:24 - 57:1); there is no suggestion in the record that any such persons are African-American.

In short, the deposition testimony provided by Williams-Scarlett and by Njike is of no assistance to Johnson.  Neither witness, or, for that matter, Johnson herself, identifies any conduct or statement that could be characterized as direct evidence of racially-discriminatory animus, and the above-referenced circumstantial evidence is insufficient to establish that requisite motivation.

Having reviewed the record independently, the Court finds Johnson has failed to rebut the presumption of correctness as to the hearing officer's finding that Kelly was motivated by discriminatory animus.

//

//

//

//

[11]Excerpts from the Njike deposition are Exhibit H to the Trowbridge Declaration filed September 22, 2005.

1

### D. Retaliation

2       Before the hearing officer, Johnson argued her termination was the product of

3 retaliation.[12]  Specifically, Johnson argued that Kelly retaliated against Johnson for having

4 requested a medical leave in January 2004, for comments she made with respect to a civil

5 action instituted by Njike, for filing a worker's compensation claim, and for filing grievances.

6 Before this Court, Johnson does not articulate any basis for rebutting the presumption of

7 correctness as to the hearing officer's finding that Johnson failed to show Kelly retaliated

8 against Johnson based on her request for a medical leave, and, consequently, such finding

9 is presumed correct.  Johnson argues, however, that this Court should find Kelly retaliated

10 because of the comments Johnson made with respect to Njike's lawsuit, for filing a worker's

11 compensation claim, and for filing grievances.

12       At the administrative hearing, Johnson testified that when she was asked in 2001 by

13 counsel for AC Transit to provide a deposition in connection with a lawsuit filed by Njike

14 against AC Transit, Johnson responded by stating that if she testified, it would not be

15 favorable to AC Transit.  Johnson also testified she told De Stigter, AC Transit's Human

16 Resources Director, that she would "rather not be deposed."  (See HON at 24.)  The

17 hearing officer found such comments did not constitute protected activity,[13] and, in any

18 event, that there was no evidence Kelly was aware of the comments.  Assuming, arguendo,

19 the above-referenced comments by Johnson constitute, as Johnson argues, activity

20 protected by state and/or federal law, Johnson fails to show the hearing officer's finding that

21 Kelly was unaware of such comments is contrary to the weight of the evidence.  Indeed,

22 there is no evidence to support a finding that Kelly knew about the comments.

23

24       [12]Johnson has not challenged the hearing officer's finding that AC Transit General
Manager Rick Fernandez ("Fernandez"), who made the decision to terminate Johnson, did

25 not retaliate against Kelly.  The Court thus presumes the hearing officer's finding with
respect to Fernandez is correct and considers only whether Kelly acted with a retaliatory

26 motive.

27       [13]Johnson did not testify in Njike's lawsuit.  The above-referenced comments

28 constitute the only evidence pertaining to Johnson's connection to Njike's lawsuit against
AC Transit.

1    Johnson filed a claim for worker's compensation benefits in December 2002, based

2  on "work related stress."  (See HON Ex. L.)  The hearing officer found no "rational" or

3  "temporal" connection between Johnson's filing such claim and her termination, which

4  occurred over a year later.  (See Decision at 42.)  Although Johnson argues such finding is

5  against the weight of the evidence, she fails to point to evidence that would support a

6  finding that a causal link exists between her December 2002 worker's compensation claim

7  and the January 2004 termination.  See, e.g., Clark County School Dist. v. Breeden, 532

8  U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an

9  employer's knowledge of protected activity and an adverse employment action as sufficient

10  evidence of causality to establish a prima facie case have uniformly held that the temporal

11  proximity must be very close.")

12    Johnson submitted written grievances against Kelly in November 1997, (see HON

13  Ex. H), in May 1999, (see HON Ex. J), in October 2001, (see HON Ex. K), in September

14  2003, (see HON Ex. N), and in October 2003 (see HON Ex. O).  The hearing officer found

15  Johnson failed to show her termination was in retaliation for such grievances.  Because the

16  latter two grievances were filed, respectively, three and four months before Johnson's

17  termination, an inference of retaliation is fairly drawn.  See Nidds v. Schindler Elevator

18  Corp., 113 F. 3d 912, 919 (9th Cir. 1997) (holding four-month period between protected

19  activity and adverse employment action sufficient to give rise to inference of casual link).

20  AC Transit, however, has come forward with a legitimate, non-discriminatory reason for

21  Johnson's termination, specifically, that Johnson's work performance was, as discussed

22  above, deficient; Johnson, for her part, has failed to show the weight of the evidence

23  establishes such reason was a pretext for retaliation against Johnson for her having filed

24  grievances.  See id. (holding where plaintiff relies on inference of causal link based on

25  temporal connection between protected activity and termination, such inference is rebutted

26  by articulation of legitimate reason for termination, and plaintiff must then offer evidence of

27  pretext to establish retaliation claim).

28    Having reviewed the record independently, the Court finds Johnson has failed to

11

1  rebut the presumption of correctness as to the hearing officer's finding that the termination

2  was not in retaliation for Johnson's having engaged in protected activity.

3      Accordingly, AC Transit is entitled to summary judgment on the remaining claim

4  alleged in the First Cause of Action, and Johnson is not entitled to a writ of mandamus

5  setting aside the administrative finding upholding the termination.

6  **II.  Second Cause of Action (Due Process Denial)**

7      In her Second Cause of Action, Johnson alleges that AC Transit deprived her of

8  property, specifically, continued employment with AC Transit, without due process.  In her

9  filings in response to defendants' motion for summary judgment, Johnson clarifies that the

10  basis of this claim is that AC Transit did not provide her with a constitutionally adequate

11  pre-deprivation hearing, and that although the hearing officer, who considered such claim,

12  agreed with Johnson, the hearing officer erred in finding Johnson was not entitled to an

13  award of back pay.  (See Pl.'s Opp., filed September 22, 2005, at 18; Pl.'s Brief, filed

14  November 30, 2005, at 9.)  In light of Johnson's clarification, and the manner in which the

15  parties have briefed the Second Cause of Action, the Court construes the Second Cause of

16  Action as a petition to set aside the Decision with respect to the remedy provided therein

17  for the due process deprivation.[14]

18      Due process requires that permanent government employees, prior to a termination,

19  be "given notice of the charges, the reasons therefor, and an opportunity to respond prior to

20  the imposition of the discipline."  See Barber v. State Personnel Board, 18 Cal. 3d 395,

21  399-400 (1979).  If an employee does not receive the required process until a post-

22  termination proceeding is conducted, and the termination is upheld at that time, the proper

23  remedy for the pre-termination deprivation is an award of back pay for the period between

24  _____

25      [14]Because the same issue as presented in the Second Cause of Action was decided
by the hearing officer, Johnson may only seek relief from a court if she can set aside the

26  hearing officer's finding as to that issue.  See University of Tennessee v. Elliott, 478 U.S.
788, 799 (1986) (holding federal due process deprivation claims are barred by adverse

27  finding made by hearing officer, if state law would give preclusive effect to hearing officer's
decision); Johnson v. City of Loma Linda, 24 Cal. 4th 61, 65 (2000) (holding, under state

28  law, adverse findings made by hearing officer are "binding in later civil actions" unless set
aside by reviewing court).

1   the date of termination and the date the termination was sustained in the post-termination

2   proceeding.  See id. at 403.

3   Here, the hearing officer found that AC Transit did not afford Johnson a

4   constitutionally adequate pre-deprivation hearing because AC Transit had failed to provide

5   "a full and fair opportunity for [Johnson] to have her side heard before the discharge took

6   effect."  (See Decision at 35.)  As a remedy, the hearing officer ordered that Johnson be

7   retroactively reinstated as an employee, until the date of the Decision, in which, as noted,

8   he upheld the termination.  (See id. at 44.)  The hearing officer further found that because

9   Johnson was "not medically able to work" between the date of the termination and the date

10   of the Decision, she was only entitled to employee benefits and not to back pay.  (See id. at

11   35-36, 44; see also Amended Award.[15])

12   As noted, Johnson was terminated on February 24, 2004, and the Decision was filed

13   on August 6, 2004.  Consequently, the issue is whether Johnson was able to work during

14   such period.  Johnson argues the hearing officer erred in not accepting her testimony that

15   she had been advised by a physician, who is not identified in the record, that she could "try"

16   to return to work if "Kelly [was] not there."[16]  (See HON 31.)  Johnson's treating

17   psychologist, Gary Jenkins, PhD. ("Dr. Jenkins"), completed a series of "Visit Verification

18   Family Leave" forms in which he stated, without qualification, that Johnson was "unable to

19   attend work" as of January 20, 2004 and through May 9, 2004.  (See HON Ex. A).  Having

20   reviewed the record independently, the Court finds Johnson has failed to overcome the

21   presumption as to the correctness of the hearing officer's finding that she was medically

22   unable to work during the period of February 24, 2004 through May 9, 2004.

23   As to the period from May 10, 2004 through August 6, 2004, the record does not

24   reflect any statement from Dr. Jenkins or anyone else that Johnson was unable to work.  In

25

26   [15]The Amended Award is Exhibit C to the Trowbridge Declaration filed November 30, 2005.

27   [16]Johnson did not state when her physician made such statement to her.  Because

28   Kelly left AC Transit at some prior to March 29, 2004, (see HON at 3), it can be presumed that such statement, if made, was made before that date.

13

1  the last in the series of forms completed by Dr. Jenkins, he estimated that Johnson could

2  return to work without restrictions beginning May 10, 2004.  (See id.)  In light of such

3  evidence, and defendants' having failed to point to any evidence to the contrary, the Court,

4  having reviewed the record independently, finds Johnson has overcome the presumption

5  with respect to the hearing officer's finding that she was medically unable to work during

6  the period of May 10, 2004 through August 6, 2004.  Consequently, Johnson is entitled to a

7  writ of mandamus setting aside the Decision to the extent the Decision is based on such

8  finding, as well as an award of back pay for the period of May 10, 2004 through August 6,

9  2004.

10      Accordingly, AC Transit is entitled to summary judgment on the Second Cause of

11  Action to the extent such cause of action is based on the claim the hearing officer erred in

12  finding Johnson is not entitled to back pay for the period of February 24, 2004 through May

13  9, 2004, and Johnson is entitled to a writ of mandamus setting aside the finding that she is

14  not entitled to back pay for the period of May 10, 2004 through August 6, 2004.

15  **III.  Termination Claims (Discrimination)**

16      Johnson alleges that her termination was motivated by discriminatory animus based

17  on Johnson's race/color, age, disability, and medical condition; such claims are alleged

18  against AC Transit in the Third through Eighth Causes of Action. The Third Cause of Action

19  alleges race/color discrimination in violation of the Fair Employment and Housing Act

20  ("FEHA"), the Fourth Cause of Action alleges race/color discrimination in violation of Title

21  VII, the Fifth Cause of Action alleges age discrimination in violation of FEHA, the Sixth

22  Cause of Action alleges age discrimination in violation of the Age Discrimination in

23  Employment Act, the Seventh Cause of Action alleges disability/medical condition

24  discrimination in violation of FEHA, and the Eighth Cause of Action alleges disability

25  discrimination in violation of the Americans with Disabilities Act.[17]

26

27      [17]The Seventh and Eighth Causes of Action, in addition to alleging discriminatory

28  termination, also allege failure to accommodate.  The failure to accommodation claims are
    discussed in section V, infra.

14

1        Johnson does not argue she can establish any of the above-referenced

2   discrimination claims by direct evidence of a discriminatory motive.  Rather, Johnson relies

3   on the burden-shifting approach set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.

4   792 (1973), whereby the plaintiff first must establish a prima facie case; if the plaintiff does

5   so, the defendant must proffer a legitimate reason for the termination; and if the defendant

6   does so, the plaintiff is required to show that the defendant's proffered reason is pretextual.

7   <u>See</u>, <u>e.g.</u>, <u>Cornwell v. Electra Central Credit Union</u>, 439 F. 3d 1018, 1028 (9th Cir. 2006)

8   (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).  To establish a prima facie case, Johnson

9   must offer evidence that she is a member of a protected class, she was performing her job

10  adequately, she was subject to an adverse employment action, and she was treated

11  differently than similarly situated employees who are not members of the protected class.

12  <u>See</u> <u>id</u>. at 1031.

13       AC Transit argues that Johnson, as a result of the Decision, is unable to establish a

14  prima facie case; specifically, AC Transit argues, Johnson cannot establish she was

15  adequately performing her job.

16       Under state law, a plaintiff in a later civil action is barred by adverse findings made in

17  an administrative hearing, unless those findings are set aside by a reviewing court.  <u>See</u>

18  <u>Johnson</u>, 24 Cal. 4th at 65-66, 71 (holding, where plaintiff failed to timely seek review of

19  administrative finding that he was laid off for economic rather than discriminatory reasons,

20  plaintiff's FEHA claim was barred by such administrative finding).  Under federal law, a

21  plaintiff in an action alleging federal discrimination claims is barred by adverse

22  administrative findings, provided a reviewing court has upheld such findings.  <u>See</u> <u>Kremer</u>

23  <u>v. Chemical Construction Corp.</u>, 456 U.S. 461, 480, 485 (1982) (holding where state court

24  upheld administrative finding that defendant had not discriminated against plaintiff, plaintiff

25  was bound by such finding in subsequent Title VII proceeding).

26       Here, as discussed above, the hearing officer found Johnson's work performance

27  was not adequate, and, on independent review, such finding has been upheld by this Court.

28  Consequently, Johnson cannot establish a prima facie case of employment discrimination

1  under the McDonnell Douglas framework.

2       Johnson argues she nonetheless can establish a discriminatory termination claim

3  under a "mixed-motive" theory.  Under a mixed-motive theory, an employer may be held

4  liable for an adverse employment action "even if it had a legitimate reason for its

5  employment decision, as long as an illegitimate reason was a motivating factor in the

6  decision."  See Dominguez-Curry v. Nevada Transportation Dep't, 424 F. 3d 1027, 1040

7  (9th Cir. 2005).  In such cases, however, where, as here, a plaintiff seeks to establish

8  discrimination under McDonnell Douglas, the plaintiff must first establish a prima facie

9  case, see id. at 1037, which, as discussed above, includes a showing that the plaintiff was

10 adequately performing his/her job.  As further discussed above, Johnson cannot establish

11 she was adequately performing her job.

12      Accordingly, AC Transit is entitled to summary judgment as to the Third through

13 Sixth Causes of Action, in their entirety, and as to the Seventh and Eighth Causes of

14 Action, to the extent such causes of action are based on a claim of discriminatory

15 termination.

16 **IV.  Termination Claims (Retaliation)**

17      Johnson alleges the termination was in retaliation for Johnson's having engaged in

18 protected activity; such claims are alleged against both AC Transit and Kelly.  Specifically,

19 the Ninth Cause of Action alleges retaliation in violation of both FEHA and Title VII, on

20 account of Johnson's having offered to assist Njike in his civil lawsuit against AC Transit

21 and Johnson's having filed internal and external grievances, and the Eleventh Cause of

22 Action alleges retaliation in violation of the California Family Rights Act ("CFRA") and the

23 federal Family and Medical Leave Act ("FMLA"), on account of Johnson's having taken

24 medical leave starting January 20, 2004.

25      Johnson does not argue she can establish a retaliation claim with direct evidence of

26 such motivation.  Rather, Johnson again relies on a McDonnell Douglas burden-shifting

27 approach, which requires that she initially establish a prima facie case.  Under both federal

28 and state law, a prima facie case of retaliation requires, inter alia, evidence of a "causal

16

1   link" between the protected activity and the termination.  See Bergene v. Salt River Project

2   Agricultural Improvement and Power Dist., 272 F. 3d 1136, 1140-41 (9th Cir. 2001)

3   (discussing elements of Title VII retaliation claim); Yanowitz v. L'Oreal USA, Inc., 36 Cal.

4   4th 1028, 1042 (2005) (discussing elements of FEHA retaliation claim); see also Dudley v.

5   Dep't of Transportation, 90 Cal. App. 4th 255, 261 (2001) (holding prima facie case under

6   both CFRA and FMLA requires showing of causal link between exercise of right to take

7   leave and adverse employment action).

8         Here, as discussed above, the hearing officer found Johnson had failed to show a

9   causal link existed between the claimed protected activities and the termination, and, on

10  independent review, such finding has been upheld by this Court.  Consequently, Johnson

11  cannot establish a prima facie case of retaliation.  See Johnson, 24 Cal. 4th at 65-66;

12  Kremer, 456 U.S. at 480.

13        Accordingly, defendants are entitled to summary judgment on the Ninth and

14  Eleventh Causes of Action.

15  **V.  Failure to Accommodate/Failure to Engage In Interactive Process Claims**

16        As part of her Seventh Cause of Action, Johnson alleges that AC Transit failed, in

17  violation of FEHA, to accommodate her and failed to engage in an interactive process with

18  respect to her disabilities and medical conditions during the period of her employment;

19  Johnson also alleges, as part of her Eighth Cause of Action, that AC Transit failed, in

20  violation of the ADA, to accommodate her and failed to engage in an interactive process

21  with respect to her disabilities during that period.[18]  Johnson has identified the alleged

22  "medical and mental conditions/disabilities" as "job stress," "cancer," and "an adjustment

23  disorder, with anxiety and depression."  (See Johnson Decl., filed September 22, 2005,

24  ¶ 2.)

25  //

26

27        [18]Although, as noted, the findings made by the hearing officer, to the extent not set
    aside herein, are binding on Johnson, defendants have not argued such findings bar
28  Johnson's non-termination claims.

1

**A.  Disability**

2   Defendants argue that Johnson, for several reasons, is unable to establish a failure

3   to accommodate and/or failure to engage in an interactive process claim based on a

4   disability.  At the outset defendants assert that Johnson is not disabled.  An individual is

5   "disabled" for purposes of FEHA if, <u>inter</u> <u>alia</u>, she has a "mental . . . condition" that "limits a

6   major life activity."  <u>See</u> Cal. Gov't Code § 12926(i).  An individual is "disabled" for purposes

7   of the ADA if, <u>inter</u> <u>alia</u>, she has a "mental impairment" that "substantially limits" one or

8   more "major life activities."  <u>See</u> 42 U.S.C. § 12102(2).  Major life activities include

9   "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

10   speaking, breathing, learning, and working."  <u>See</u> 29 C.F.R. § 1630.2(l).

11   Johnson fails to expressly identify in her complaint, in her declarations or in any of

12   her briefs, the major life activity or activities she asserts are limited as a result of any

13   mental impairment, and no such activity is apparent from the record.  The only major life

14   activity to which Johnson even alludes is the major life activity of working.  In that respect,

15   however, Johnson discusses only her difficulties in working under Kelly's supervision, not

16   working in general, or even working at the job of an executive administrative assistant for

17   AC Transit.  Each accommodation Johnson sought and did not receive concerns her

18   supervision by Kelly.  (<u>See</u> Johnson Decl., filed September 22, 2005, ¶ 16 (stating she

19   wanted a "transfer to a different supervisor, an audit of [Johnson's] job, [or] counseling of

20   Ms. Kelly"); <u>see id</u>. ¶ 28 (stating she was not offered a "comparable position for AC Transit

21   which did not report through Ms. Kelly"); <u>see</u> HON at 41 (noting Johnson's testimony that

22   she could perform as an executive administrative assistant "for anyone other than Kelly").)

23   Under state law, a plaintiff can demonstrate she is limited in the major life activity of

24   working if the limitation pertains to "a particular employment."  <u>See</u> Cal. Gov't Code

25   § 12926.1(c).  Given Johnson's testimony that she could work for AC Transit in the

26   particular job of an executive administrative assistant, so long as she was assigned to a

27   different supervisor, Johnson cannot, under state law, establish a triable issue as to

28   whether she is limited in the major life activity of working.  Further, Johnson cannot

1    establish a triable issue as to the more stringent requirement, under federal law, that to be

2    substantially limited in the major life activity of "working," she must be unable to perform a

3    "broad class of jobs."  See Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92 (1999)

4    (holding that, assuming, arguendo, "working" constitutes major life activity for purposes of

5    ADA, plaintiff is substantially limited in such activity if plaintiff is unable to perform "broad

6    class of jobs").

7           Accordingly, AC Transit is entitled to summary judgment on the Seventh and Eighth

8    Causes of Action, to the extent such causes of action are based on a claim of failure to

9    accommodate and/or failure to engage in an interactive process with respect to disabilities.

10          **B. Medical Condition**

11          Under FEHA, an employer is required to engage in an "interactive process" with an

12   employee "to determine effective accommodation, if any, in response to a request for

13   reasonable accommodation by an employee . . . with a . . . known medical condition."  See

14   Cal. Gov't Code § 12940(n).  A "medical condition" is defined as a "health impairment

15   related to or associated with a diagnosis of cancer or a record or history of cancer" or

16   certain "genetic characteristics."  See Cal. Gov't Code § 12926(h).  There being no

17   evidence or argument that Johnson's asserted mental impairments are "genetic

18   characteristics," the sole "medical condition" at issue herein is Johnson's diagnosis of

19   cancer.

20          Johnson has offered evidence that after she returned to work following surgery

21   pertaining to cancer, Kelly refused Johnson's request to park in a spot closer to the office,

22   (see Johnson Decl., filed September 22, 2005, ¶ 26), and that Kelly, over Johnson's

23   objection, required that Johnson perform extra tasks, (see id. ¶¶ 22-23).  In their motion for

24   summary judgment, defendants fail to set forth any argument as to why Johnson is unable

25   to establish a claim based on a theory that defendants failed to engage in an interactive

26   process concerning Johnson's requests for a closer parking space and that she not be

27   assigned additional tasks; the sole argument defendants make with respect to Johnson's

28   claims based on her medical condition is that Johnson cannot establish she was subject to

a termination because of that condition.  A failure to engage in an interactive process to determine whether to accommodate a medical condition, however, is distinct from a claim that a later termination occurred because of discriminatory animus based on that medical condition.  Compare Cal. Gov't Code § 12940(a) (termination) with Cal. Gov't Code § 12940(n) (failure to engage in interactive process to determine if requested accommodation necessary).

Accordingly, AC Transit is not entitled to summary judgment on the Seventh Cause of Action to the extent such cause of action is based on a claim that AC Transit failed to engage in an interaction process to determine whether to accommodate Johnson's requests pertaining to her diagnosis of cancer.

## VI. Hostile Work Environment Claim

In her Tenth Cause of Action, Johnson alleges that Kelly subjected Johnson to a hostile work environment on account of Johnson's "race/color, age, medical condition and/or disability and/or mental condition and/or disability."  (See Compl. ¶ 106.)

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted); see also Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 609 (1989) (holding Title VII standard for hostile work environment claim applicable to hostile work environment claim under FEHA).  Whether an environment is "sufficiently hostile or abusive" is determined by "looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotations and citation omitted).

Defendants argue Johnson cannot establish she was subject to severe or pervasive conduct on account of her membership in a protected class.

20

1    At the outset, the Court finds defendants are entitled to summary judgment to the

2  extent Johnson claims a hostile work environment based on disability; as discussed above,

3  Johnson fails to offer sufficient evidence to raise a triable issue of fact as to whether she is

4  disabled.

5    To the extent Johnson claims a hostile work environment based on her race, age,

6  and cancer diagnosis, she relies on the following conduct:

> On virtually a daily basis, Ms. Kelly would interrupt me, yell at me, make false
> accusations that I had personally made mistakes or was responsible for
> something that someone else had done, talk down to me, condescend to me,
> belittle me, treat me as though I were an inferior person to others in the
> department, and talk to me as a person would talk to a young child.

10  (See Johnson Decl., filed September 22, 2005, ¶ 8; see also id. ¶ 14 (stating Kelly

11  "badgered [her] incessantly, constantly yelled at and interrupted [her], continued to make

12  false accusations against [her], and treated [her] as a person would treat a child").)  In

13  addition to the testimony discussed above, Johnson's former co-worker Njike testified that

14  "Kelly treated [Johnson] like a child, constantly belittled her in public, and had her run

15  menial errands, i.e., getting things for her out of her car, getting her drinks, etc," (see Njike

16  Decl. ¶ 7);[19] when asked what he witnessed Kelly do that he believed was "out of line," he

17  answered, "[a] couple of times body language, the way she spoke to her, the kind of orders

18  she gave her, which is the kind of orders one wouldn't give to a co-worker," (see Njike Dep.

19  at 55:19-24; see also id. at 56:2-8 (stating that by "body language," he meant "like walking

20  past her, her eye contact, the cold shoulder")).

21    To create a triable issue, evidence offered to support a claim of a hostile work

22  environment must be sufficiently detailed; conclusory assertions that the plaintiff was

23  harassed are insufficient.  See Holly D. v. California Institute of Technology, 339 F. 3d

24  1158, 1174 (9th Cir. 2003) (holding, to create triable issue warranting trial on sexual

25  harassment claim, even where supervisor-employee sexual relations occur, courts "require

26  more than conclusory allegations that the supervisor proposed a sexual liaison and the

27  ───────────────

28    [19]The Njike Declaration is Exhibit C to the Trowbridge Declaration filed September
22, 2005.

employee responded to the overtures in order to protect her employment interests"); cf.
McGinest v. GTE Service Corp., 360 F. 3d 1103, 1113 n. 5 (9th Cir. 2004) (holding where
plaintiff "provided detailed deposition testimony describing his personal observations" of
racial harassment, such testimony "did not consist of mere 'conclusory allegations' which
would be insufficient to defeat a motion for summary judgment").  Here, the description of
Kelly's conduct provided by Johnson and Njike is lacking in sufficient detail to create a
triable issue of fact.  For this reason alone, AC Transit and Kelly are entitled to summary
judgment on the Tenth Cause of Action.

In any event, none of the conduct on which Johnson relies is described as involving
any type of insult, epithet, comment, or joke directed at Johnson's race, age, or cancer
diagnosis.  Rather, the asserted conduct essentially involves criticism of Johnson's work
performance.  Even if a trier of fact might reasonably find that Kelly engaged in uncivil and
ill-mannered behavior toward Johnson when criticizing Johnson's work performance,
"discourtesy or rudeness should not be confused with racial harassment," see Faragher,
524 U.S. at 787 (internal quotation and citation omitted), or with harassment on account of
age or a cancer diagnosis, see id. at 787-88 (holding "standards for judging hostility are
sufficiently demanding to ensure that Title VII does not become a 'general civility code'").
Rather, to be actionable, harassing conduct must be shown to have been engaged in
because of the plaintiff's membership in a protected class.  See, e.g., Kang v. U. Lim
America, Inc., 296 F.3d 810, 817 (9th Cir. 2002) (holding Korean plaintiff offered sufficient
evidence to raise triable issue of fact as to claim of national origin harassment where
supervisor verbally abused plaintiff, routinely calling him names such as "stupid," "cripple,"
"jerk," "son-of-a-bitch," and "asshole"; physically abused plaintiff by, inter alia, throwing
office equipment and supplies at him; and repeatedly told plaintiff Koreans were required to
work harder than persons of other origins).

Here, Johnson fails to even articulate a theory as to why Kelly's assertedly harsh
behavior occurred because of Johnson's age or Johnson's cancer diagnosis, let alone point
to any evidence to support such a finding.  Consequently, for this additional reason,

22

1    Johnson fails to raise a triable issue of fact as to the existence of a hostile work

2    environment on account of her age or cancer diagnosis.

3          With respect to her claim of racial harassment, Johnson relies on her testimony and

4    that of Njike, both of whom state they did not witness Kelly directing toward persons who

5    were not African-American the type of harsh criticism Kelly assertedly directed at Johnson.

6    (See Johnson Decl., filed September 22, 2005, ¶ 8; Njike Decl. ¶ 7.)  Johnson also relies

7    on the testimony of Njike and Williams-Scarlett, discussed above, with respect to Kelly's

8    criticism of their own work.  (See Njike Dep. at 61:12 - 62:17; Williams-Scarlett Dep. at

9    26:9-10, 33:20-21, 34:9-10).  In each instance, the description of Kelly's conduct concerns

10   Kelly's dissatisfaction with work performance.  There is no evidence of any insult, epithet,

11   comment, joke, or remark directed at Johnson's, Njike's, or Williams-Scarlett's race.  Under

12   such circumstances, Johnson appears to be proceeding on a disparate treatment theory of

13   hostile work environment, specifically, that Kelly engaged in a practice of uncivilly and

14   harshly criticizing work performed by African-Americans but not others.

15         Assuming such a theory is cognizable, Johnson has failed to show other employees

16   outside her protected class were treated differently under similar circumstances.  Indeed,

17   as noted, those circumstances have not been described in other than conclusory terms.[20]

18   Further, one of the temporary workers who performed Johnson's job during Johnson's

19   medical leave was African-American.  (See HON 11, 13.)  There is no evidence Kelly

20   treated that worker, whose work Kelly found satisfactory, in a manner similar to the way

21   Johnson asserts Kelly treated Johnson, indicating the motivation for Kelly's behavior was

22   not Johnson's race.  Consequently, even if the conclusory description of Kelly's conduct

23   could be considered sufficient, Johnson's claim fails for this additional reason.

24         Accordingly, defendants are entitled to summary judgment on the Tenth Cause of

25   Action.

26   //

27

28         [20]As discussed above, Johnson's claim fails for that reason alone.

1   **VII.  Supplemental Jurisdiction**

2         The Court's jurisdiction over the instant action is based on the existence of a federal

3   question.  (See Notice of Removal, filed November 16, 2004, ¶ 2.)  As a result of the

4   Court's findings as set forth above, the only remaining claim is the Seventh Cause of Action

5   to the extent that cause of action is based on Johnson's claim that AC Transit failed to

6   engage in an interactive process to determine if it should accommodate Johnson's medical

7   condition, in violation of § 12940(n).  The Court's jurisdiction over such remaining state law

8   claim is supplemental in nature.  See 28 U.S.C. § 1367(a).

9         A district court may decline to exercise supplemental jurisdiction where "the district

10  court has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C.

11  § 1367(c)(3).  Where a district court has granted summary judgment on each federal claim

12  in an action, the district court, pursuant to § 1367(c)(3), may properly decline to exercise

13  supplemental jurisdiction over any remaining state law claims.  See Bryant v. Adventist

14  Health System/West, 289 F. 3d 1162, 1169 (9th Cir. 2002).

15        The Court will decline to exercise supplemental jurisdiction over the remaining claim

16  in the Seventh Cause of Action.

17                                  **CONCLUSION**

18        For the reasons set forth above, defendants' motion for summary judgment is

19  hereby GRANTED in part and DENIED in part, Johnson's petition for a writ of mandamus is

20  GRANTED in part and DENIED in part, and the complaint is REMANDED in part, as

21  follows:

22        1.  AC Transit is entitled to summary judgment on the First Cause of Action and

23  Johnson is not entitled to a writ of mandamus as to the First Cause of Action.

24        2.  To the extent Johnson asserts the hearing officer erred in finding Johnson is not

25  entitled to back pay for the period of February 24, 2004 through May 9, 2004, AC Transit is

26  entitled to summary judgment on the Second Cause of Action and Johnson is not entitled to

27  a writ of mandamus as to the Second Cause of Action.

28        3.  To the extent Johnson asserts the hearing officer erred in finding Johnson is not

                                        24

1  entitled to back pay for the period of May 10, 2004 through August 6, 2004, AC Transit is

2  not entitled to summary judgment on the Second Cause of Action and Johnson is entitled to

3  a writ of mandamus as to the Second Cause of Action.  Specifically, the Court hereby

4  GRANTS a writ of mandamus setting aside the Decision to the extent it does not award

5  Johnson back pay for the period of May 10, 2004 through August 6, 2004.

6      4.  AC Transit is entitled to summary judgment on the Third, Fourth, Fifth, Sixth and

7  Eighth Causes of Action.

8      5.  AC Transit is entitled to summary judgment on the Seventh Cause of Action to

9  the extent such cause of action is based on claims of discriminatory termination and failure

10 to accommodate and engage in an interactive process with respect to disabilities; AC

11 Transit is not entitled to summary judgment on the Seventh Cause of Action to the extent

12 such cause of action is based on a claim of failure to engage in an interactive process with

13 respect to Johnson's medical condition.

14     6.  AC Transit and Kelly are entitled to summary judgment on the Ninth, Tenth, and

15 Eleventh Causes of Action.

16     7.  The remaining claim in the Seventh Cause of Action is hereby REMANDED to

17 the Superior Court of California, in and for the County of Alameda.

18     **IT IS SO ORDERED.**

19

20 Dated: September 8, 2006

21                                                              MAXINE M. CHESNEY
                                                                United States District Judge

22

23

24

25

26

27

28

25